Virgin *et al. vs.* Wingfield.

BELLE VIRGIN *et al.*, plaintiffs in error, *vs.* JOHN T. WING-
FIELD, administrator, defendant in error.

1. Where land was settled on a trustee for the use of the wife and family of
A, and at the death of A and wife, to their children, and A, purporting
to act as "trustees of his wife," sold the property to B:
*Held,* that on the trial of a bill filed by the children against B's executor, to
recover the property, A is a competent witness to show that B knew the
truth as to the trust and its nature, and acted with full knowledge thereof;
nor does the death of B render A incompetent, since the issue on trial is
not any contract between A and B.

2. In this state, if one buy land and go into possession thereof, with a full
knowledge, in fact, that this vendor has no right to sell, and no title to con-
vey, this is evidence to go to the jury, upon the question of the *bona fides*
of his possession.

3. As, in our judgment, the evidence of Weems was both competent and
material, and had it not been ruled out, would have made a case proper to
be submitted to the jury on the *bona fides* of Wiley's possession, we think
there ought to be a new trial.

Trusts. Witness. Prescription. Possession. Before Judge
POTTLE. Wilkes Superior Court. November Term, 1874.

This is the second time this case has been before this court:
See 51*st Georgia Reports,* 139.

The children of John B. and Elizabeth Weems, filed their
bill against Wingfield, administrator of Nicholas Wylie, de-
ceased, making, in brief, this case:

Soon after the marriage of the said John B. and Elizabeth,
they entered into a contract with each other, and with Samuel
B. Wingfield as trustee, by which they conveyed to the latter
all property which should come to the said Elizabeth, as her
share in the estate of her father, in trust for the sole and sep-
arate use of the said Elizabeth and her children born, and to
be born, free from the liabilities, etc., of her said husband.
This instrument further provided that upon the death of the
husband and wife, the said property, with any accumulations
that may have been made, should be equally divided between
the children. The said Elizabeth is dead, but John B. still
survives. Under this conveyance a certain piece of real es-
tate in the town of Washington passed to such trustee. With-

out any authority whatever, the said John B., on November 14th, 1863, sold this property to Nicholas Wylie, for $17,-500 00, in Confederate money, then only of the value of ten cents in the dollar. Wylie purchased with full notice of the facts herein charged, both constructive and actual. On October 10th, 1864, the said Weems and Wylie applied to Samuel B. Wingfield, as trustee, for a conveyance to said property, and by false representations and undue influence brought to bear upon him, and upon the said Elizadeth, induced them to join in the execution of a deed to said Wylie. For this instrument no consideration whatever was ever paid. Wylie has been in possession of said property from the time of said sale until he died in the year 1871, enjoying the rents and profits, worth $1,000 00 per annum. From his death to the present time, his administrator has been in full control of the same.

Pray that the aforesaid deeds may be canceled and set aside, and the trust restored; that said administrator be required to restore the possession of said property and to account for the rents and profits.

The defendant set up title by prescription, relying, to sustain the same, upon said deeds, and seven years' possession thereunder, before the filing of this bill.

To meet this defense the complainants amended their bill, alleging that Nicholas Wylie at the time of such purchase from John B. Weems, not only had full, actual notice of the aforesaid trust, but bought with the intent to defraud them; that his title and possession were therefore fraudulent and in no sense *bona fide.*

In the course of the trial the complainants offered the evidence of John B. Weems to the following effect: Was not present when Samuel Wingfield, trustee, made the deed to Wylie. No consideration was paid for the same, but the latter had previously paid to witness $18,000 00 in Confederate money for the premises. It was paid to witness as trustee. Wylie had full knowledge of the trust over said property. The notice of the trust was conveyed to him by witness in an

interview about the contemplated purchase, and after the terms had been agreed on. Witness advised him that he was trustee for his wife and children, and that in his judgment an order of the superior court was necessary to authorize him to make a good title. Wylie replied that he had taken counsel, was twenty-one years of age and knew what he was doing. When he spoke to witness about the second deed the matter was fully discussed, and he remarked that all he wanted was the signature of witness' wife.

This evidence was objected to by the defendant on the ground that Weems was an incompetent witness, as Wylie was dead. The objection was sustained, and the complainants excepted.

Other evidence was introduced for the complainants, showing the property in controversy to have been worth from $8,000 00 to $9,000 00, and from $700 00 to $800 00 per annum rent; that Wylie had moved some outhouses off the place worth $750 00; that he had stated his reason for removing such buildings and not putting repairs on the place was, so that if complainants got the property back they would get the goose and not the feathers; that Wylie, for the year 1866, only gave in town property to the amount of $6,000 00 for taxation; that he then owned a house and lot in town worth $5,000 00 or $6,000 00, besides other property.

At the close of complainants' testimony, on motion of defendant, a non-suit was ordered, and the former excepted.

Error is assigned upon each of the above grounds of exception.

VASON & DAVIS; W. M. & M. P. REESE; JOHN C. REED, for plaintiffs in error.

R. TOOMBS, for defendant.

McCAY, Judge.

1. The issue on trial here was the right of the complainants to this land, and the transaction between Weems and

Wylie is not any transaction of the plaintiffs or their agent with him. Weems is not the *other party* to the suit, or one of the other parties, nor do the complainants claim under him. They propose to prove a fact by Weems, showing Wylie's knowledge, and if Weems is to be excluded because that fact transpired in a transaction between Weems and Wylie, under which the complainants set up no rights, but on the contrary repudiate, the death of a man would almost wipe out the evidence of his acts.

2. We think, too, that Weems' evidence is material. The sole defense of the defendant is the statute of prescription. Under our law that cannot be relied on successfully if the possession be fraudulent, or if the color of title be fraudulent. This court held, in the case of *McAmy vs. Higdon,* 50 *Georgia,* 629, that one who buys land from a mere *squatter,* knowing that he is such, cannot rely upon a title so obtained as a prescriptive title. Our Code, section 2679, provides that a possession, to be adverse, must not have originated in fraud; and again, section 2683, that there must be color of title, and that no prescription can be based on a color of title that is forged or fraudulent. We have held, in several cases, that *constructive* notice does not make a title fraudulent; that the law will not infer fraud in such cases from negligence; that the fraud contemplated must be some conscious, actual wrong, something which shows that the party charged was acting in bad faith, was doing what he must have known was wrong and unfair: *McAmy vs. Higdon,* 50 *Georgia,* 629; *Smith vs. Wright,* 43 *Ibid.,* 291; *Brown vs. Wells,* 44 *Ibid.,* 573. Under the testimony of Weems it appears that Wylie knew all about the trust deed—the right of the children—knew that Wingfield was the trustee and not Weems, and that Weems had no right to sell; at any rate, under his testimony, the jury might have so found. We are of the opinion that if this be so; if Wylie took Weems' deed, and paid the Confederate money, knowing all the facts and intending to take the risk, hoping he would not be disturbed—trading on the power of Weems to control his wife and children; if he knew he was getting

what Weems had no legal right to sell and put him in possession of, and was ready to use up the kernel and leave the children the husks; that this is evidence to go to the jury, on which it is competent for them to find this deed from Weems and the *possession acquired under it fraudulent.*

3. We do not say it was fraudulent, but that under Weems' and the other testimony, the case was one for the jury. If the original deed, and *the possession* was fraudulent—and nothing was paid for the second deed—and the trustee got nothing, it would be only an additional fraud. All this, however, was for the jury. We express no opinion as to what the jury ought to find. We simply say that it would not, with Weems' testimony in, be a case for non-suit: See the cases of *Gray vs. O'Neal,* 12 *Georgia,* 424. See, also, 17 *Georgia,* 574; 20 *Ibid.,* 480; 35 *Ibid.,* 132; 37 *Ibid.,* 26; 26 *Ibid.,* 617; 32 *Ibid.,* 400.

These cases establish that if there be any evidence for the plaintiff, he has a right to go to the jury. The case of *Tison vs. Yawn,* 15 *Georgia,* goes very far.

Judgment reversed.