## Veal *et al. vs.* Robinson.

1. The judge who tried the case committed no errors in the various rulings and charges to which exception has been taken by the defendant below; nor was there error in the finding of the jury upon the questions thus submitted.

2. The court should not have refused to submit to the jury the issue made by the defendant's claim to a prescriptive title, and should have charged, as requested, that "color of title is anything in writing purporting to convey title to the land, which defines the extent of the claim, it being immaterial how defective or imperfect the writing may be, so that it is a sign, semblance or color of title; and if they should be satisfied from the evidence that the defendant was in actual, public, continuous, peaceable, notorious and uninterrupted possession of the premises for seven years prior to the commencement of the suit under such color of title, and that her claim did not originate in fraud, and that she held in her own right, in good faith, against all other persons, including her husband; then she was entitled to retain possession of the land." There was some evidence on which this charge could be based, and it should have been given, together with proper instructions, applying hypothetically to the assumed facts, and the jury should have been further instructed as to what constituted fraud and bad faith, and should have been told that if these things existed, defendant had no right to hold the premises.

September 18, 1883.

New Trial. Title. Prescription. Fraud. Charge of Court. Before Judge HUTCHINS. Gwinnett Superior Court. March Adjourned Term, 1883.

Veal and Scruggs brought complaint for land against J. E. Robinson and his wife, Mrs. Fannie Robinson. The abstract of title attached to the declaration was as follows: A deed from Thomas M. Meriwether, chairman of the board of trustees, etc., to Joseph Robinson, dated January 28, 1874; a deed from Joseph Robinson and his wife, Frances E. Robinson, to plaintiffs, dated December 21, 1874; and a deed from J. M. Patterson, sheriff, to plaintiffs, dated December 5, 1876.

J. E. Robinson filed a disclaimer of title. Mrs. Robinson pleaded the general issue.

On the trial, the following facts were shown: De-Witt C. Jones sold the property to Hopkins and others as trustees of the Orphans' Home of the North Georgia Conference, on November 14, 1872; on January 28, 1874, Meriwether, as chairman of the board of trustees, conveyed the land to Joseph Robinson; Joseph Robinson made a deed to Mrs. Fannie Robinson, dated March 12, 1874, the expressed consideration being $1,500.00; the same grantor, his wife joining him, made a deed to plaintiffs, dated December 21, 1874, for the expressed consideration of $1,800.00; on December 5, 1876, Patterson, sheriff, sold the land under an execution in favor of Burge against Joseph Robinson, under a judgment obtained in 1867. Veal and Scruggs were the purchasers.

In addition, plaintiffs introduced evidence to the following effect: Meriwether, as chairman of the board of trustees, sold the land to J. E. Robinson; the latter paid $350.00 and gave notes for $1,400.00, receiving a bond for title. Subsequently, by consent of J. E. Robinson, his father, Joseph Robinson, paid the balance of the purchase money and took a deed in his own name; the payment was made by delivering to Meriwether certain notes given

by one White to Joseph Robinson. Before the purchase, J. E. Robinson said it was all right; that there was nothing in the way, but that it was bought with the proceeds of his father's homestead. He showed them over the land. In August, 1875, Scruggs, one of plaintiffs, went to the place. J. E. Robinson and his wife, the defendant, were living on it. Mrs. Robinson said they had it rented from Joseph Robinson (her husband's father), and wanted to rent it again if plaintiffs bought; that she would send her husband down to see about it. He did go to Stone Mountain, together with his father, in December, 1875, to see plaintiffs, and rented the place, giving his note for the rent; this has been sued on but not collected, and has been held by plaintiffs. Prior to this, Veal, one of plaintiffs, testified that he bought of Joseph Robinson a note of J. E. Robinson for $100.00 for rent of the place for 1874; J. E. Robinson said it was all right, that it would be paid; it was not, however, and Veal left it with one Miller, a justice of the peace, for collection, and has not seen it since. When the sheriff levied on the place, he served notice of the levy on J. E. Robinson; his wife was present at the time; it was spoken of at the supper table, in presence of Mrs. R., what the sheriff had come for. Subsequently plaintiffs sued J. E. Robinson for the land, a recovery was had, writ of possession issued in 1880, and plaintiffs were put in possession. Defendant was present; before dispossession, she told one of the plaintiffs that she wished to buy the land if she could get some money that was coming to her. When the sheriff sought to dispossess her, she refused to go out; wanted a few days to see her attorney; but did not claim or exhibit any title. Plaintiffs were put in possession and left a tenant there; the tenant remained two or three days, and was then put out by Wimpy, the attorney of defendant; and when one of plaintiffs went to the place, he found Wimpy and defendant and family there. J. E. Robinson returned the land for tax as his up to 1877, and then his wife returned it.

v 50—52

Defendant also presented evidence, in brief, as follows: J. E. Robinson bought the land from Meriwether, chairman of the board of trustees, for his wife, gave notes signed by him for her, and took a bond for titles for her. He paid off the first note of $350.00 with her money. The balance of $1,400.00 was paid in the following manner: Joseph Robinson, the father of J. E. Robinson, discovered that Mrs. Robinson, the defendant, had some money, and went to his son several times to get it; he had notes on one White, and it was arranged that Meriwether would take the notes for the last payment; this was done, and J. E. Robinson let his father have his wife's money for the White notes, contrary to his wife's wishes and instructions, she having given him the money to pay the balance of purchase price and take the deed to her. The deed was made to Joseph Robinson because he "wanted it that way, and he would make a deed to defendant in a short time." J. E. Robinson did not know there was anything against his father. On being informed what had been done, defendant was surprised and dissatisfied. Joseph Robinson came up on March 14, 1874, and made the deed to defendant.

J. E. Robinson denied having given any rent note to Joseph Robinson; admitted that he gave the note to plaintiffs in 1875; he explained this by saying that he and his wife became dissatisfied and wanted to move off the place, and told Joseph Robinson to sell it; that Scruggs, one of the plaintiffs, came up and told him that plaintiffs had bought the land from Robinson, and he thereupon gave them a rent note; that when he went down to close the matter with Joseph Robinson, he found that " it was not satisfactory, and no sale as he instructed; then he repudiated said note and made old man Joseph Robinson, afterwards in November, 1876, take up this note by his note, and delivered it same day to Veal, and Veal gave an order on J. A. Miller for the note." (This was denied by plaintiffs.) He never told his wife anything

about the note, and she knew nothing of it until after it was sued. He received $375.00 from the estate of her father in 1872, and $88.00 in 1873, and these sums went towards paying for the land. They were married in 1866. Defendant went into possession of the land in 1873, and held adversely to him and every one else with claim of right; witness never laid any claim to the land. He bought land in Greene and Rockdale counties with his wife's money and took title in his own name, but she always claimed it. That land was sold, and part of the proceeds went to pay for this land. The bond for title was for her. The money came from her father's estate; her husband was authorized to act as her agent, and got the money for her. She denied the admissions alleged to have been made by her and the statement said to have been made by plaintiff to her. Several receipts by J. E. Robinson, dated from 1866 to 1870, to the administrators of the estate of his wife's father, for sums of money, were introduced, also several witnesses who swore that defendant had been in open possession of the land since 1873, holding adversely to her husband and every one else; that her husband cultivated the land.

There was some further conflict as to the note left with Miller for suit, not material here.

The jury found for the plaintiffs the premises and $575 for rent. Defendant moved for a new trial on the following grounds :

(1.) Because the court charged that if J. E. Robinson and Fannie Robinson were married before December, 1866, and her father died before that time, the marital rights of the husband attached to the share of the wife in her father's estate, unless he had treated it as her separate property; but that, if he had received it for her and had paid off land notes given by her, or by him as her agent, and had taken the deed to the land in her name, the title would vest in the wife and become her separate estate.

(2), (3.) Because the verdict was contrary to the charge of the court.

(4.) Because the court did not charge certain requests in substance as follows:

(*a.*) That Mrs. Robinson is not bound by the acts of her husband, unless he was her agent or his acts were ratified by her.

(*b.*) That if Mrs. Robinson had possession adverse to her husband and everybody else, it would charge plaintiffs with notice.

(*c.*) It was not the duty of Mrs. Robinson to record the deed received by her from Joseph Robinson immediately; nor to notify plaintiffs that he had no title; but it was their duty to take notice.

(*d.*) Innocent purchasers are protected because they invest their money on the faith of the apparent rights of the seller as the parties have allowed them to exist; a judgment creditor does not stand in the same position; one arises by contract; the other by operation of law. A judgment lien is on defendant's property, and is good as a general rule on property to which defendant has a clear equitable title, but does not extend to property where the equitable title is in a third person, though the legal title may be in the defendant.

(5.) Because the court refused to submit the issue on the title by prescription in his charge to the jury (a plea of prescription having been filed by the defendant) and refused to charge as follows: "Color of title is anything in writing to land which defines the extent of the claim. It is wholly immaterial how defective or imperfect the writing may be; if it is in writing, it is sign, semblance or color of title. If, therefore, you are satisfied from the evidence, that Mrs. Fannie Robinson was in the actual, public, continuous, notorious, exclusive, uninterrupted, peaceable possession of the premises in dispute, seven years prior to the commencement of this suit, under color of title such as I have described to you, which must not originate in fraud, and possessed the land in her own right against her husband and all other persons, then you will find for the defendant."

[To this ground the court appended the following note: "The court refused to charge on the subject of prescription because it did not consider the notes taken up by defendant a color of title."]

(6), (7.) Because the court admitted evidence of sayings, conversations and transactions of Robinson, not in his wife's presence.

[The court appended the following note: "In reference to the seventh, eighth and ninth grounds, the court admitted the sayings of Robinson because there was some evidence that he and his wife entered in possession of the land in dispute under a contract of rent made by J. E. Robinson, and as he was the head of the family, *prima facie* he was in possession, and the wife's possession was his. The court in admitting this evidence stated that, as the case stood at present, the evidence was admissible. Whether it would amount to anything, would depend on the case that the defendant might make when she came to introduce testimony,—meaning that if she should show written title to herself, the *prima facie* presumption that the possession was that of the husband would be rebutted."]

(8.) Because the court admitted the evidence of J. W. Scruggs, as follows: Witness had a suit against Joseph E. Robinson for the possession of the land in dispute and gained it in the Supreme Court. During the time of said suit Fannie Robinson never asserted her right or claim to the land, and witness never heard of her claim until after he had gained the suit.

[See note to (6) and (7).]

(9.) Similar to (6) and (7).

(10.) Because one of the jurors was a nephew by marriage of a brother of one of plaintiffs. [Affidavits were referred to but none were attached.]

(11.) Because the court admitted in evidence the note given by J. E. Robinson to Veal and Scruggs for rent of the property in dispute.

(12.) Because the court admitted in evidence the writ of possession issued at the suit of plaintiffs against J. E. Robinson, with the entry of the sheriff thereon showing that he had placed plaintiffs in possession.

(13.) Because, pending the progress of the case, one of the jurors had a conversation with an outsider in regard to it. [There was a showing and counter showing as to this ground which were very conflicting.]

(14) to (17.) General exceptions to the verdict.

By amendment was added another ground as to sickness of counsel for defendant during the trial; but it appeared that he went through the trial and did not ask for a continuance.

The motion was sustained, and plaintiffs excepted.

CLARK & PACE; S. J. WINN, for plaintiffs in error.

J. A. WIMPY, for defendant.

HALL, Justice.

1. A careful examination of this voluminous record satisfies us that the judge who tried this case committed no error in the various rulings and charges to which exceptions have been taken by the defendant below, nor was there error in the finding of the jury upon any of the questions thus submitted to them. To this extent the verdict was in accordance with the evidence. There was no error in refusing to charge any of the requests made by defendant's counsel, except in one instance.

2. The court should not have refused to submit to the jury the issue made upon the defendant's claim to a prescriptive title, and should have charged upon that subject as requested by her counsel, " that color of title is anything in writing purporting to convey title to land, which defines the extent of the claim, it being immaterial how defective or imperfect the writing may be, so that it is a sign, semblance, or color of title; and if they should be

satisfied, from the evidence, that the defendant was in the actual, public, continuous, peaceable, notorious, and unin-terrupted possession of the premises for seven years prior to the commencement of the suit, under such color of title, and that her claim did not originate in fraud, and that she held in her own right in good faith against all other per-son, including her husband, then she was entitled to re-tain possession of the land." This charge ought to have been given, together with proper instructions applying hypothetically to the assumed facts; and the jury should have been further instructed as to what constituted fraud and bad faith, and should have been told that if these things existed, then she had no right to hold the premises. There was some evidence on which this charge could be requested, and the issue that it made should have been submitted to the consideration of the jury, and they should have been left to apply it to the facts of the case. Whether it would have changed their finding we cannot certainly know, and we forbear the expression of any opinion as to the effect it should have in bringing about a different re-sult upon another trial. For the reason above stated, and for that alone, the judgment granting a new trial is affirmed.

Judgment affirmed.