# Nashville, Chattanooga & St. Louis Railway v. Mathis.

*Statutory Action of Ejectment.*

1. *Adverse possession under void tax sale; when record cannot be looked to, to extend limits of actual possession.*—The record of a void tax sale, which does not purport to convey title, good or bad, cannot be looked to for the purpose of extending the limits of the adverse possession taken by the purchaser, of a portion of the tract, to the whole subdivision described in the record.

2. *Adverse possession by railroad company of strip used as right of way.*—Where a railroad company locates its right of way over a strip of land, and, entering thereon, throws up its embankments, prepares its road bed through the entire tract, and exercises acts of ownership over it, it must be considered as acquiring thereby adverse possession of the strip for railroad purposes.

3. *Prior possession as evidence of title.*—When a plaintiff in ejectment shows no other right of recovery than the presumption of title

arising from possession, the rule is that the defendant may defeat the suit by showing that he, or those under whom he claims, had another possession anterior to that upon which the plaintiff relies.

APPEAL from the Circuit Court of Marshall.
Tried before the Hon. J. A. BILBRO.

OSCAR R. HUNDLEY and GOODHUE & SIBERT, for appellant.—A party who only shows possession under an unfounded claim of title will be defeated by evidence of actual possession and occupation prior to the entry made under such pretended claim.—Sedgwick & Wait on Trial of Title to Land, § 717; *Ford v. Belmont*, 60 N. Y. 567.

It is conceded that an invalid tax-deed, when possession is shown to have been taken under it, may constitute color of title; but such a record as the one introduced in evidence, which does not purport to convey title, unaccompanied by any evidence of a deed, or any document purporting to convey the title, cannot constitute color of title.—*Saltmarsh v. Crommelin*, 24 Ala. 352; *Stovall v. Fowler*, 72 Ala. 77.

A possession of a part will be regarded as possession to the boundary specified in the color of title only when there is no antagonistic possession.—*Childress v. Calloway*, 76 Ala. 173.

LUSK & BELL, *contra*.—The record of the tax sale was offered as color of title, and to show the extent of the possession of Louis Wyeth. It was a public record and act required to be performed by a public officer, and was admissable.—1 Greenleaf on Ev., § 483; 3 Brick. Dig. p. 411, § 79; 2 Am. & Eng. Ency. of Law, 467; 7 *Ib*. 75. The entry under the tax-sale was adverse.—3 Brick. Dig. p. 17, § 30.

The possession of the plaintiff was sufficient to support ejectment against a mere trespasser, and such the defendant was.—*Echols v. Hubbard*, 90 Ala. 309; 3 Brick. Dig. p. 325, § 47.

The excavations on the land were not notice of any claim of possession by the defendant or by the Tennessee & Coosa Railroad Company.—*Beary v. Car. Cen. R.*, 12 So. E. Rep. 917; *Bell v. Denson*, 56 Ala. 444; *Donovan v. Bissell*, 53 Mich. 462; 1 Am. & Eng. Ency. of Law, 272; *Childress v. Calloway*, 76 Ala. 130; *Louisville & Nashville*

*R. Co., v. Phillgaw*, 88 Ala. 268 ; *Ozark Land Co, v. Leonard*, 20 Fed. Rep. 268.

HEAD, J.—The action is statutory ejectment, to recover possession of certain land, which is thus described in the complaint : "a strip or parcel of land one hundred feet wide, extending through the North East quarter of the North West quarter of section thirty-three, in Township Eight of range four, East, situated in Marshall county, Alabama ; being fifty feet on each side of the center of the track of the railroad now in operation on said subdivision of land, the same being cleared of timber, graded, with excavations and embankments, and trestles constructed thereon, on which locomotives and cars may now run, and which is the only railroad on said subdivision." This land is spoken of throughout the case as "the railroad right of way." The controlling facts, which the testimony, without conflict, tended to establish, as the basis for the respective claims of the parties, may be thus stated : There is an entire omission of any evidence with reference to the land sued for, or to the subdivision of which it forms a part, prior to the year 1858 ; and it is not made to appear who had the title or possession prior to that time. In 1858 the right of way of the Tennessee & Coosa Railroad Company was located over the land in dispute, and the roadbed graded in 1859 and 1860, all the way, in parts, between Guntersville and Attalla. In 1860 or 1861, the embankment on the land in controversy was thrown up by said railroad company, and from that time nothing further was done on the road by the company except clearing off the right of way, over the whole line from Guntersville to Gadsden, to sometime in 1883. In 1873, Louis Wyeth, who was president of the Tennessee & Coosa Railroad Company, purchased the forty acre tract, described in the complaint, and of which the land sued for formed a part, at some sort of tax sale made by the probate judge of Marshall county, but it does not appear that the purchaser ever procured a certificate or deed, or that any title passed to him thereby. The entire evidence with reference to said sale, is an entry upon the record of tax sales, by the probate judge and signed by him, as follows : "The N. E. ¼ of the N. W. ¼ Sec. 33, T. 8, R. 4, E., containing 40 acres, assessed to estate of W. M. Henderson, deceased,

for 1872, taxes, &c. Due $5,25 and sold to L. Wyeth."
The plaintiff claims under said Wyeth, who is not shown
to have taken possession of any portion of the tract until
1879.. In that year, he, Wyeth, rented the land to one
Moore, and in the following year contracted to sell it to
him, but Moore never, at any time, took actual possession
of the strip in controversy. Neither the leasing nor con-
tract of sale is shown to have been in writing. Pending
Moore's possession, a deed was executed by Louis Wyeth
to one Pugh on the 17th day of December, 1881, convey-
ing, without warranty, merely the interest the grantor
had; and this is the first instrument purporting to con-
vey title found in the record. On the 7th day of Decem-
ber, 1883, Pugh.conveyed the forty acres to Moore, who
continued to reside upon a portion of the tract, and who
had remained there until he conveyed it to the plaintiff
in 1886..

Moore, who was examined for the plaintiff, speaking
of his possession during the six years, from 1880 to 1886,
testifies, that he lived on the land, upon which there
were no improvements when he bought from Wyeth;
that he cleared part of the land, built upon it, and
made corn and cotton thereon; that, when he bought
the land, there was an old railroad bed on it, running
through the land; *that he never cultivated any part of
the land covered by the railroad bed; that no part of the
railroad bed was enclosed; that he never interfered with the
right of way at all, and had nothing to do therewith; that
he never made any claim to the right of way, but was
informed the railroad claimed it, and that nobody ever
asserted any claim thereto.*

In 1886, the plaintiff, after his purchase, went into the
actual possession of a portion of the tract, conveyed by
Moore's deed, claiming under the conveyance, but had
never exercised any acts of ownership over the unin-
closed right of way, further than paying taxes on the
subdivision, of which it formed a part. He neither en-
closed, cultivated, nor cut timber from, the right of way.
In 1890, the defendant was put in possession of the right
of way by the Tennessee & Coosa Railroad Company,
and the road was completed in December of that year
through the quarter section claimed by the plaintiff.

In 1891, the Tennessee & Coosa Railroad Company
executed a conveyance of its whole line, property and

rights of way to the defendant company, which in 1892 completed the railroad to Guntersville and put it in operation. This suit was instituted on June 16th, 1891.

It is a common saying in actions of ejectment that the plaintiff must recover upon the strength of his own title, rather than upon the weakness of that of his adversary. It is, therefore, proper to inquire into the claims of the plaintiff, to ascertain whether he has made it appear that he is entitled to the land. It is not claimed that the plaintiff showed a good documentary title, but he rests his right to recover, *first*, upon the contention that he had, prior to the bringing of the suit, acquired a good title by adverse possession of the land for ten continuous years, by himself and those under whom he claims, and *second*, upon possession merely, if his first contention be not maintainable. We will examine each of these claims in the light of the evidence adduced upon the trial.

The circuit judge, in admitting in evidence the record of the tax sale to Louis Wyeth, stated that it was received, not to prove title, but to serve as color of title; meaning thereby, of consequence, that the record of the tax sale might be looked to for the purpose of extending the actual possession of Louis Wyeth, taken in 1879 by his tenant Moore, of a portion of the tract, to the whole subdivision, described in the record. In this view the circuit judge was in error. Undoubtedly, the fact that the land had been purchased by Wyeth at tax sale was admissible, in connection with the other evidence, to show the character of his possession, as being under a claim of ownership, and in hostility to the true title, and thus to show an adverse holding of so much of the land as was in his actual possession.—*Ladd v. Dubroca*, 61 Ala. 25. But this is very different from saying that it could serve as color of title to extend the adverse holding beyond the limits of the *possessio pedis*. "Color of title is that which in appearance is title, but which in reality is no title." 1 Am. & Eng. Enc. Law, p. 276. The tax record did not purport to convey title, good or bad, and was neither the sign, semblance nor color of title.—*Veal v. Robinson*, 70 Ga. 809; *Saltmarsh v. Crommelin*, 24 Ala. 352; *Stovall v. Fowler*, 72 Ala. 77. Neither Moore nor Wyeth having taken actual possession of the strip of land, at any time, plaintiff is driven to the deed

of December 17th, 1881, executed by Wyeth to Pugh, as a basis for the claim that, as color of title, it served to define the limits of the possession thereunder, and to thereby include the right of way. If everything that the plaintiff could claim in this connection were conceded and if it were admitted there was adverse possession from that time of the whole tract, this would not avail to show that he had acquired title, for the simple reason that ten years had not elapsed from the time of that conveyance to the institution of this suit on June 16th, 1891; much less had the necessary period been completed when the defendant was put in possession of the strip in controversy in 1890. Without reference to other considerations arising out of the evidence, the facts stated serve to demonstrate the failure of the plaintiff to show title by adverse possession. There was no aspect of the evidence entitling him to recover on that theory. Did he show prior possession upon which to recover against the defendant?

When a plaintiff in ejectment shows no other right of recovery than the presumption of title arising from possession, the rule is that the defendant may defeat the suit by showing that he, or those under whom he claims, had another possession anterior to that upon which the plaintiff relies.—*Louisville & Nashville R. R. Co. v. Philyaw*, 88 Ala. 264. The undisputed evidence, if believed, showed that long before the plaintiff, or any one under whom he claims, asserted any right of ownership in the subdivision of land, embracing the strip sued for, or had any possession of any part thereof, the Tennessee & Coosa Railroad Company located its right of way over the strip, and, entering thereon, threw up its embankments, and prepared its road bed through the entire extent of the forty acre tract. It thus took actual possession of the right of way, exercising acts of ownership over it, and must be considered as acquiring thereby adverse possession of the strip for railroad purposses. *Yancey v. S. W. R. R. Co.*, 101 Ala. 234; *Tenn. & Coosa R. R. Co. v. Taylor*, 102 Ala. 224. This possession, under the circumstances stated, is sufficient to give said railroad company and its assigns a right of possession of the right of way as against the plaintiff, who showed no better title, and who is forced to rely simply upon an *alleged* later possession.—*Strange v. King*, 84 Ala. 212;

*Mills v. Clayton*, 73 Ala. 359. The defendant shows the older possession, and, therefore, the better presumption of title, and can not be made to yield the possession to the plaintiff, who has proven no title, either documentary or by adverse possession for ten continuous years. Much of the argument for the appellee has been devoted to showing that the possession, upon which defendant relies, did not continue, with the essential elements of an adverse holding, for ten years, and that, therefore, it had not shown a good title by adverse possession. The plaintiff having shown no right to recover, we are not all concerned with the inquiry his counsel proposes into the validity of the defendant's claim of title.—*Brock v. Yonge*, 4 Ala. 584.

It is unnecessary to consider in detail the various exceptions reserved to the giving and refusal of charges. If the jury believed all the evidence, the defendant was entitled to a verdict, and they should have been so instructed, as the defendant requested.

Reversed and remanded.

BRICKELL, C. J., not sitting.