## LEE *v.* O'QUIN.

1. Where a party to a case on trial, in his testimony as a witness, makes an unequivocal admission as to a matter of fact, it is not improper for the court in its charge to state to the jury that such an admission has been made.

2. In a contest between two deeds from the same grantor, conveying the same land, both of which were executed before the passage of the registry act of 1889, and neither duly recorded, the older will ordinarily prevail. If, however, the description in the senior deed is so palpably inapplicable to the land conveyed by the junior deed as that the older could not, without reformation, be held to pass title to the land in dispute or any part thereof, the grantee in the junior deed will be protected, unless he purchased from the common grantor with knowledge that he really intended by the first deed to convey the land described in the second, and that the misdescription resulted from inadvertence or mistake.

(*a*) One of the charges complained of in the motion for a new trial is, as matter of law, substantially in accord with what is above laid down. As, however, this charge seems to assume that a reformation of the deed relied on by the defendants below was necessary, this question is left open for further consideration in the light of the facts as they may be developed at the next hearing.

3. It is not essential to the validity of an alleged title by prescription, based on possession under color of title, that the person claiming such prescription should have taken the instrument relied on as evidence of his title, under such an honest belief only as would be entertained by an ordinarily intelligent man that the paper would give him a good title to the land in question. If such paper was in law color of title, and was taken honestly and in good faith, the degree of intelligence with which this was done would be immaterial. It is the bona fides which is important, and not the amount of knowledge or mental capacity constituting the basis thereof.

Argued October 25, 26, 1897. — Decided January 22, 1898.

Equitable petition. Before Judge Sweat. Charlton superior court. March 30, 1897.

On January 9, 1896, J. B. O'Quin brought his petition against Eli Lee and William Davidson, for injunction to restrain them from cutting and removing timber from certain land to which he claimed title, and for the recovery of damages for timber alleged to have been cut therefrom by them. The land was described in the petition as "all that tract or parcel of land lying and being in the County of Charlton and State of Georgia, on the west side of the Great Satilla river, containing one thousand acres more or less, formerly owned by Robert and George

Lang, and by them deeded to Enoch Hannam, as per deed dated February 1st, 1854; bounded north by lands of Dollern, Potter & Co., formerly owned by Joshua E. Mizell and Joseph Mills, east by the Great Satilla river; south by lands of Henry B. Turner and vacant lands; and west by the old boundary lands and line; said tract being part of a tract purchased by Dollern, Potter & Co. from John E. Bryant, sheriff Charlton county, as per deed dated February 13th, 1857." The petition alleged that the sale by the sheriff to Dollern, Potter & Co. was made under an execution against Enoch Hannam, who, at the date of the rendition of the judgment upon which the execution issued and at the date of the levy, was in possession of the land in dispute; that petitioner entered into possession of the premises under a deed from Dollern, Potter & Co., to petitioner, executed April 13, 1880, and he has ever since been in public, continuous, exclusive, uninterrupted, peaceable and adverse possession of the same under said deed, claiming the land as his own in good faith; and that since the date of the last mentioned deed the defendants have had actual knowledge of the execution and existence of the deed, and of all the rights and claims of petitioner. No answer was filed by Davidson. Lee answered, that Davidson claimed under him; that Lee did not deny the plaintiff's title to and possession of the land described in the petition, but that the plaintiff had no title to, and was not and had not been in possession of, "the land upon which the alleged trespass was committed," but Lee had a perfect title to it, having purchased it in good faith from A. J. Wainwright on August 6, 1880, and having immediately gone into possession of the same under said title, and having been in actual possession ever since, his possession being evidenced by buildings, in which he resides, upon the land, and by enclosure and cultivation of about fifteen acres of the same. The deed from Wainwright to Lee, which was introduced in evidence, described the land conveyed by it as "all that tract granted unto Joseph Nungazer, situate, lying and being in the county of Charlton, on the west side of the Satilla river, containing 300 acres more or less." This deed was dated August 16, 1880, was recorded January 17, 1896, and recited a consideration of

$75. Other conveyances relied upon by Lee were as follows: Grant from the State of Georgia to Joseph M. Nungazer, dated November 26, 1859 (?) conveying all that tract or parcel of land, containing 300 acres, situated, lying and being in the county of Camden, in said State, and abutting and bounding on the east side of the Great Satilla river; on the north by J. E. Mizell; on the west by Mrs. Elizabeth Mills, J. M. Nungazer, and on the south by J. M. Nungazer. Deed from Margaret Nungazer, widow of J. M. Nungazer, to Enoch Hannam, dated November 21, 1852, and recorded in 1856, conveying a tract of land in Charlton county "containing 300 acres more or less, bounded north by the Great Satilla river, east by J. E. Mizell, west by Elizabeth Mills and J. M. Nungazer, and south by J. M. Nungazer's land." Deed from Dollern, Potter & Co. to A. J. Wainwright, dated January 10, 1880, and recorded January 14, 1896, conveying, for a consideration of $75, land described as in the deed from Margaret Nungazer to Enoch Hannam, above mentioned. The deed from Dollern, Potter & Co. to the plaintiff was recorded January 8, 1896.

The jury found for the plaintiff, and awarded him $95 damages. Lee's motion for a new trial was overruled, and he excepted. The material grounds of the motion are set out in the opinion.

*Hitch & Myers*, for plaintiff in error.
*Toomer & Reynolds*, contra.

LITTLE, J. 1. The defendant claimed title to about 300 acres of land situated in Charlton county, having purchased the same from a named party, and immediately gone into possession thereof, such possession having been evidenced by buildings, in which he resides, upon the land, and by enclosure and cultivation of about fifteen acres of the same. The plaintiff filed his petition against the defendant, for an injunction to restrain him from cutting and removing timber from the land to which the defendant claimed title, and to recover damages for timber alleged to have been cut therefrom. Upon the trial of the cause, the plaintiff, J. B. O'Quin, introduced as a witness in his own behalf, testified, among other things,

as follows: "I am not suing for the land that he [defendant] is living on; [nor] for the land that he has got under cultivation or enclosure. I am suing for the timber." In charging the jury concerning the various issues raised, the court, among other things, instructed them as follows: "It is proper in this connection that the court should state to you that, under the pleadings in this case and claims and contentions as made, the plaintiff, J. B. O'Quin, does not seek to recover any part or portion of the premises claimed by the defendant, Eli W. Lee, upon which he lives and has enclosed, but the contention is for the other land outside of that, and the timber alleged to have been cut thereon." The plaintiff in error excepts to this charge and assigns the same as error, "because misleading and not a correct statement of the contentions set out in the pleadings." We think this exception not well taken. We are unable to discover anything in the language of the charge calculated to mislead the jury. The evidence upon which it was based was an admission on the part of the plaintiff that his suit did not and was not intended to attach to certain property claimed by Lee; and the effect of the charge was to confine the jury, in their deliberations, to the property only which was covered by the litigation. When an admission is made by one of the parties to a cause, it is not error for the presiding judge to state to the jury that such admission has been made. *McCurdy & Barnes* v. *Binion,* 80 *Ga.* 691.

2. The plaintiff and the defendant claimed title to the land in dispute under a common grantor, viz., Dollern, Potter & Co., the plaintiff claiming under a deed from said common grantor, of date April 13, 1880, conveying "all that tract or parcel of land, situate, lying and being in the County of Charlton, State of Georgia, on the west side of the Great Satilla river, containing one thousand acres more or less, formerly owned by Robert and George Lang, and by them deeded to Enoch Hannam, by deed dated February 1st, 1854; said land being bounded as follows: north by Dollern & Potter's land, formerly owned by Joshua E. Mizell and Joseph Mills, east by the Great Satilla river, south by Henry B. Tanner's vacant lot, and west by the old boundary line." The defendant claimed

through A. J. Wainwright, under a deed to the latter from Dollern, Potter & Co., of date January 10, 1880, conveying "all that tract or parcel of land, situated, lying and being in [Charlton county, Georgia], containing 300 acres, more or less, bounded north by the Great Satilla river; east by J. E. Mizell; west by Elizabeth Mills and J. M. Nungazer, and south by J. M. Nungazer's land." It appears that the land in controversy was originally granted to Joseph M. Nungazer, in which grant the land was described as containing 300 acres, "abutting and bounding on the east side of [by?] the Great Satilla river, on the north by J. E. Mizell, on the west by Mrs. Elizabeth Mills, J. M. Nungazer, and on the south by J. M. Nungazer." The evidence tended to show that the land to which the defendant claimed title under the deed to Wainwright was embraced within the boundaries of the land described in the deed from Dollern, Potter & Co. to the plaintiff, and further tended to show that the boundaries named in the deed to Wainwright, under which the defendant claimed, were not applicable to the land in controversy, inasmuch as that deed bounded the land on the north by the Great Satilla river and on the east by J. E. Mizell, whereas the land in controversy was bounded on the north by J. E. Mizell and on the east by the Great Satilla river. Indeed, one witness testified that the description as laid in the Wainwright deed would not cover the land in controversy. It appears that the deed from Dollern, Potter & Co. to the plaintiff was not recorded until January 8, 1896, and that of Dollern, Potter & Co. to Wainwright, under which the defendant claimed, was not recorded until January 14, 1896.

With reference to this state of facts, the court charged the jury as follows: "It is claimed and insisted upon the part of the plaintiff in this case, that the deed from Dollern, Potter & Company to A. J. Wainwright, with the description therein laid, does not embrace, cover, and convey any part or portion of the land in controversy, being a separate and distinct tract of land and not embraced in or covered by the conveyance from Dollern, Potter & Company to the plaintiff J. B. O'Quin; it being contended upon the part of the defendant, that while that may

be true, taking the description as a whole and as laid, it is nevertheless true that it was the intention of the parties to convey the land now claimed by the defendant Eli W. Lee, and that by mistake a misdescription of the land was made. In reference to this contention, the court charges you that if it be true that such was the intention of the original parties, and that such a mistake was made in giving the original description, it could only be corrected and the parties relieved from the mistake and its consequences in a certain way, and that is by proper proceeding before a court of equity, in order to correct any mistake which may have been made, and to give effect to the intention of the original parties. This is not being sought for or being done in this case. Equity will grant relief as between original parties or their privies in law, in fact, or in estate, except purchasers for value and without notice. Even in a proper proceeding of that kind, it would not be applicable in this case, after Dollern, Potter & Company had subsequently sold and conveyed the land in question to J. B. O'Quin; if, for a valuable consideration, O'Quin without notice took such conveyance, then even a court of equity could not grant such relief to the original parties as would affect the rights acquired by O'Quin. Under these rules and instructions, therefore, you are not to consider that question, as that question could only be pertinent and relevant in this case upon the claim being made upon the part of the defendant that, both the plaintiff and the defendant in this case claiming under Dollern, Potter & Company as their common grantor, the plaintiff took with notice. If Eli Lee, claiming to have the oldest deed from this common grantor and entered under this deed or not, his deed not being recorded in time, and O'Quin's deed was recorded in time, O'Quin was therefore without notice and would have a perfect paper title. But neither being recorded in time, the oldest deed would have priority and hold, if not fatal in its description. In determining whether or not the defendant Eli Lee had a perfect paper title as against J. B. O'Quin, and prior to and superior to that of the plaintiff J. B. O'Quin, that could only be properly considered and passed upon under the rules and instructions which the court has given you."

The plaintiff in error assigns error upon this charge, upon several grounds set out in his motion for a new trial. We think, however, as a matter of law, the charge is substantially correct. Prior to the passage of the registry act of 1889, it was provided that every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies, within one year from the date of such deed; that on failure to record within this time, the record may be made at any time thereafter, but such deed loses its priority over a subsequent deed from the same vendor, recorded in time and taken without notice of the existence of the first. Code of 1882, § 2705. Where, therefore, in a contest between two deeds from the same grantor, executed at different times and conveying the same land, it appears that such deeds were executed at a time when the law as embodied in the Code of 1882, above referred to, was of force and applicable, and that neither of such deeds was recorded within the time prescribed, nothing more appearing, the older will prevail. *Roe* v. *Maund,* 48 *Ga.* 461; *Turner* v. *Tyson,* 49 *Ga.* 165. If, however, the description in the senior deed under which the defendant claims is so palpably inapplicable to the land conveyed by the junior deed as that the older deed could not, without reformation, be held to pass title to the land in dispute or any part thereof, the grantee in the junior deed would be protected, if a purchaser for value and without notice of alleged error or misdescription in the senior deed. Civil Code, § 3976; *Spinks* v. *Glenn,* 67 *Ga.* 744; 2 Warvelle on Vendors, 799. On the other hand, if the grantee in the junior deed purchased from the common grantor with knowledge that the latter really intended by the first deed to convey the land described in the second, and that the misdescription resulted from inadvertence or mistake, such senior deed might be reformed as against the grantee in the conveyance so as to pass title to the land intended to be conveyed. Civil Code, § 3976; 2 Warvelle on Vendors, 799, and authorities there cited.

Inasmuch, however, as the judgment in the present case is reversed because of the error hereafter indicated, the question as to whether the deed under which the defendant claims can or

can not be held to pass title to the land in dispute, without reformation, is not now passed upon, but is left open to be determined in the light of the facts as they may be developed at the next hearing, and under the rules of law governing such question.

3. The defendant further contended that, treating the conveyances he held as color of title, he had acquired a good title by prescription against the plaintiff, by reason of more than seven years peaceable, quiet, adverse and uninterrupted possession, under such color of title. With respect to this contention the court charged the jury that: "Under these rules of law which the court has given you in charge, it is important for you to consider and determine the question as to, first, what kind of paper title the defendant Eli W. Lee took; if he took such paper title as would constitute good color of title under the law, then you consider further the question as to the nature and extent of his possession thereunder. You look to and consider, not only the paper title itself claimed to have been taken by the defendant Eli W. Lee, but the facts and circumstances under which it may have been taken. Did the defendant Eli W. Lee take such paper title as he, as an ordinarily intelligent man, believed would give him good title to the land in question? Did he take it under such honest apprehension and belief? If he did, and you so determine that question in looking to the title itself and to all the surrounding facts and circumstances and to all of the evidence as you have heard it in this case, then the court charges you that that would be sufficient to constitute what we term in law good color of title and upon which prescription could be based. If you should find, in looking to and determining that question, that the defendant Eli W. Lee did not take the title honestly and in good faith, believing that he was getting good title to the land now in controversy, then you should find against him on that question, and it would not be necessary for you to pursue your inquiry further, but your finding would be in favor of the plaintiff. Should you find in his favor upon that question, that he took good color of title, such title as an ordinarily intelligent man could honestly believe gave him good title to the

land in question, and in good faith he held under that for the time specified by the law, if you find that to be true, then you consider the question further as to the nature and extent of his possession; and if, under the rules of law which the court has given you in charge, that has been sufficient, so as to make his title thus taken and his possession thus held ripen into a perfect title by prescription, then your finding would be in favor of the defendant." It is contended by the plaintiff in error that this charge was erroneous, in that the court, in defining what constituted good color of title, told the jury that it must have been such title as an ordinarily intelligent man could honestly believe gave him a good title to the land in question.

In dealing with this charge, with respect to the exception taken thereto, we are not called upon to enumerate the elements which, in contemplation of law, go to make up and constitute color of title; we are not to determine whether the conveyances relied upon by the defendant were, in law, good as color of title; nor is it necessary to express any opinion whether the defendant's possession as shown by the evidence was of a character which, if founded upon color of title, would ripen into a prescriptive title. We are to determine solely the question whether or not it is essential to the validity of an alleged title by prescription, based on possession under color of title, that the person claiming such prescription should have taken the instrument relied on as evidence of title under such an honest belief only as would be entertained by an *ordinarily intelligent* man that the paper would give him a good title to the land in question. In other words, shall *ordinary intelligence* constitute a criterion by which the good faith or bona fides with which the claimant takes such title and enters, may be ascertained? By our statute it is provided that adverse possession of lands under written evidence of title, for seven years, shall give a good title by prescription; but if such written title be forged or fraudulent and notice thereof be brought home to the claimant before or at the time of the commencement of his possession, no prescription can be based thereon. Civil Code, § 3589. The written evidence of title referred to in the statute, more

commonly known in law as color of title, has been defined by this court to be anything in writing which serves to define the extent and character of the claim, with parties from whom it may come and to whom it may be made.  *Burdell* v. *Blain*, 66 *Ga.* 169; see also *Veal* v. *Robinson*, 70 *Ga.* 809.  A person is properly said to have color of title to lands when he has an apparent, though not a real title to the same, founded upon a paper writing which purports to convey them to him.  1 Warvelle on Vendors, 54.  What is color of title, however, is purely a question of law, to be determined by the court from an inspection of the papers relied on as constituting color.  Fagan *v*. Rosier, 68 Ill. 84; McIntyre *v*. Thompson, 10 Fed. Rep. 531; Black *v*. Tenn. Coal Co., 93 Ala. 113; Woodward *v*. Blanchard, 16 Ill. 424; Wright *v*. Mattison, 18 How. (U. S.) 50; Hardin *v*. Gouveneur, 69 Ill. 140; 1 Am. & Eng. Enc. L. (2d ed.) 861.  It is essential, under the statute, that there be first color of title in the party setting up the prescription; he must claim under it, and that claim must be in good faith.  The good or bad faith of the claimant is not in any sense one of the component elements of color of title.  An instrument possessing such characteristics as bring it within the definition of color of title as fixed by law, is color of title, without regard to the good or bad faith of the holder, or without reference to whether he in fact knew of the defects.  Hardin *v*. Gouveneur, 69 Ill. 140, supra.  The question as to whether or not a particular instrument gives color of title, does not involve an inquiry into the good faith of the grantee, but is to be determined solely from the writing which is relied upon as giving color of title.  If it were otherwise, and the question of good faith, which is always a question of fact to be determined by the jury, were one of the elements of color of title, it would follow that the question as to what constitutes color of title could not be one of law to be determined exclusively by the court.  See 1 Am. & Eng. Enc. L. (2d ed.) 861, note.  But under our law, although a given paper may constitute color of title, no prescription can be based thereon unless the claimant entered and claimed thereunder honestly and in good faith.  The question of what

is good faith in a person claiming under color of title is one of fact for the jury. *Walls* v. *Smith,* 19 *Ga.* 8; *Virgin* v. *Wingfield,* 54 *Ga.* 451–5; 1 Am. & Eng. Enc. L. (2d ed.) 869, and authorities cited under note 4. And whether a claimant entered under an instrument which in law was merely colorable title, in good faith and with a bona fide reliance upon the same as being good and valid, is a question which can not be measured by an arbitrary standard of intelligence. On the contrary, good faith, as contemplated by the law of prescription under color of title, has relation to the actual existing state of the mind, whether so from ignorance, scepticism, sophistry, delusion or imbecility, and without regard to what it should be from given legal standards of law or reason. The inquiry must be directed to the actual, not the supposed, state of mind, as an existing truth or fact. Ordinary intelligence might upon bare inspection know that an apparent title was worthless; and if the bona fides of the holding were to be tested by that standard, many cases would doubtless occur where a person of a lower order of intelligence, in his ignorance of law, would learn with surprise that he had occupied the land and held his color of title in bad faith, while he believed in fact that it was genuine and sufficient. The inquiry must always be directed to the bona fides of the claimant; and where it is satisfactorily made to appear that the claimant took such color of title honestly and in good faith, believing that it was genuine and valid, the degree of intelligence with which this was done would be immaterial. We think, therefore, the court erred in charging in effect that the plaintiff could not maintain his claim of a prescriptive title, unless he took the instrument relied on as evidence of his title under such an honest belief only as would be entertained by an ordinarily intelligent man that the paper would give him a good title to the land in question; and for this reason, the

*Judgment is reversed. All the Justices concurring.*