# Charleston.

ROBERT W. RENICK *vs.* BENJAMIN F. RENICK *et al.*

January Term, 1872.

R. R. purchases of B. R. sundry tracts of land. Some of the bonds executed for the purchase money are assigned, and judgments obtained thereon by the assignees. R. R. files an injunction, alleging that the acknowledgment of the deed was invalid, and the certificate of the same as to the wife of B. R. was insufficient. That a certain valuable tract of the number purchased, was descended to the wife, and was her own property, and by reason of the insufficiency of the acknowledgment the deed conveyed the life estate of B. R. only in that tract. That the wife had departed this life,.leaving several heirs. That both vendor and vendee supposed the title to be good. The bill asks a rescission of the contract, or an abatement of the purchase money. The deed contains covenants of general warranty. The acknowledgment is clearly erroneous as to the wife. HELD:

    I. That the vendor and vendee supposed, at the time of the sale, that the latter would acquire a perfect legal title by the deed, and were mistaken only as to the legal effect of it; and that the vendor had it in his power, during the life-time of his wife, to have remedied the defect in the title to the particular tract in controversy. Therefore this does not belong to the class of cases where by reason of a *patent* defect in the title, and the consequent knowledge of the vendee, he, on account of such knowledge and acquiescence, would be entitled to no relief until eviction.

    II. The defect in the title is clear and admitted, and under the peculiar circumstances of this case it would be unreasonable to restrict the vendee to his covenants of general warranty, and compel him with the admitted defect and failure of title, to discharge the whole of his purchase money. and to risk the hazard of the solvency of his vendor's estate after his decease.

Bill of injunction filed in the circuit court of Greenbrier county, October, 1870; dismissed on demurrer at April term, 1870.

The question considered on demurrer is amply stated in the opinion of Berkshire, P.

*Price* for appellant.

*Mathews & Mathews* and *Snyder* for the appellees.

It is somewhat remarkable, after the numerous and uniform decisions of the court of appeals of Virginia, and the recent decisions in this court, extending from 1809 down to 1869, that the learned counsel for the appellant, who are thoroughly familiar with these reported cases, should have sought, by injunction, to stop the collection of the judgments referred to in their bill. The plaintiff, now the appellant, endeavored to avoid the payment of the purchase money for land, to which he had had a deed, and of which he had been in possession more than nine years, upon the ground of a defective title, the defect being found in the imperfect and incomplete certificate of acknowledgment by the wife of the grantor, to whom part of this land had descended from her father, in which her husband had only a life estate, she having died leaving several heirs. There is in the bill not only no allegation of fraud on the part of the grantor, but an express disclaimer of any such intimation or belief; it is not even hinted that he is insolvent; nothing whatever is relied upon but a *patent* defect in the title to a small part of the lands conveyed, a defect perfectly apparent to every one from the face of the deed itself; and upon this ground alone, judgments in favor of *assignees* of certain of the bonds, executed for the purchase money, are asked to be perpetually enjoined, and this too without the institution or the threat of a suit to test the title, much less any actual eviction from the property purchased. These assignees had brought suits and obtained judgments, this defense not having been set up, or if it were, having proved ineffectual, upon these judgments executions issued, forthcoming bonds were given and forfeited, and upon these in turn executions went out, and it is only after all the delays of the law are thus exhausted that the vendee comes into a court of equity to ask relief and probably to get longer indulgence.

From the terms of purchase as set forth in the deed, filed with the bill, it appears that at the time this injunction was asked for, only twenty thousand dollars of the purchase money had become due, and yet it is alleged that twenty-four thousand dollars have been paid; deducting now from this twenty thousand dollars the six thousand dollars tied up in

COURT OF APPEALS OF WEST VIRGINIA.    287

Jan'y Term,          Renick vs. Renick et al.          1872

the hands of the appellees, which must have been due before judgments could have been rendered for it, and we have left fourteen thousand dollars as the only part of the amount alleged to have been paid that was actually due, so that the appellant, in his over haste to pay his vendor, must have anticipated by several years the maturity of five of his two thousand dollar bonds, and paid ten thousand dollars long before it was due, to the prejudice of assignees, who, if any preference was to be given at all, were entitled to it as between themselves and their assignor, the vendor of the appellant; they certainly had a right to expect that their bonds should be paid as they became due, and not postponed to other bonds maturing much later, and which, in fact, had not matured at all when they were paid. But for this unusual diligence in one direction and tardiness in the other, the appellant might have indemnified himself fully for any defect of title by the bonds yet due his vendor, without interfering with the rights of the appellees, and this action on his part is in itself sufficient to preclude him from the relief asked for, were he even entitled to it in all other respects—for where some of the bonds have been assigned by the vendor, the assignee will not be enjoined in his recovery, if the bonds not assigned are sufficient for indemnification, (3 Munf., 275,) as would unquestionably be the case here but for the unusual payment of debts not due, a circumstance at least suggestive of collusion between vendor and vendee, between father and son, to secure the former and let the burden of a defect in title, so open and undisguised that it must have been quite as apparent when the deed was first executed as it is now, and which might then have been removed, fall upon the innocent assignees.  2 Tuck. Com., p. 474.

In the case at bar, the vendee did not contract for a good title, his deed contains no such covenant, and in the absence of fraud, which is distinctly disclaimed, he can, under the English decisions, have no right to withhold the purchase money.  Sugden's Law of Vendors, 347, 350; 6 T. R., 606; 13 Ves., 114; 4 Bos. & Pul., 162; Co. Litt., 384; and the same doctrine is laid down in 2 John., 522, 523; 5 John., 29, 79, 84; 3 John., 375; 3 Call., 558.

And where there are patent defects in the estate, the pur-

288    COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Renick vs. Renick et al.          1872

chaser can have no relief. Sug., 221; 5 Ves. Jun., 508; 6 Ves. Jun., 678; *Yancey* v. *Lewis*, 4 H. & M., 390, where it was held that actual eviction, or superior title, of which the vendee was and must have been ignorant at the time of the purchase, would have to be shown to entitle him to relief in equity— no fraud on the part of the vendor having been established. See also *Grantland* vs. *Wight, Ex'or*, 5 Munf., 295, where it is held that it lies upon the vendee to prove the title of the vendor bad. While the Virginia decisions have gone farther than those of any other State, in relaxing the vigor of the English rule, which required actual eviction, by giving relief where a superior title was clearly shown in a third person, or where a suit was prosecuted or threatened, yet even the Virginia courts, upon the first of these grounds, have given relief only where the superior title in the third person and the consequent defect in his own, were unknown to the vendee when he purchased and had not been acquiesced in by him, where fraud had been practiced, or where the vendor was insolvent or in failing circumstances, and, generally, as an examination of the cases will show, such relief has been given only where two or more of the incidents were combined. Vide 4 II. & M., 390; 5 Munf., 295; *Supra Ralston* vs. *Miller*, 3 Ran., 44, 507; *Richards* vs. *Mercer*, 1 Leigh, 125; *Koger & al.* vs. *Kane's Adm'r*, 5 Leigh, 606; 1 Johns., Ch. Rep., 213; 2 Johns., Ch. R., 519; 5 Johns., Ch. R., 84; 12 Gratt., 410; *Clarke* vs. *Hardgrove*, 7 Gratt., 399.

In this case the defect alleged is one in *posse* and not in *esse*, the danger is contingent and remote, not imminent and threatening; so long as B. F. Renick lives, the title and possession of the appellant are good against the world; the difficulty may be cured by lapse of time or the acquiescence of those interested; it was known to him when he bought, and he had rested quietly under it for four or five years before the assignments to the appellees were made, and has kept still for as long a time since, paying in the meanwhile more on this same land than the aggregate amount of their claims to his vendor, who should bear the loss, if any is to be borne. Surely he can claim no relief at the hands of a court of equity—for there is no difficulty about the law, as laid down in the case of *Vail* vs. *Nelson*, 4 Ran, 478: "That if a purchaser knew

when he made his contract that there was a defect in the title, and that it would take considerable time to remove it, or acquires this knowledge after his purchase and acquiesces in the delay or proceeds with knowledge of the defect, in execution of his contract, he has no ground for relief." '

The most exhaustive discussion of the whole subject, to which the appellees ask the attention of this court, is found in the elaborate opinion of president Tucker, in the case of *Beale* vs. *Seiveley*, 8 Leigh, 658, where it is said that "when the vendor (as in this case) enters into a general warranty, without other covenants, he makes himself only responsible for *eviction* and secures to himself the advantage of every doubt which hung over his title being removed by lapse of time. In these cases, the vendee is confined to the covenant of general warranty. He has chosen or agreed upon his remedy, and to that remedy he must be tied down. However bad his title, he cannot sue upon his warranty, unless he be evicted, and if he cannot do so at law, upon what principle can equity make the vendor liable beyond the terms of his contract. To this rule there is an admitted exception where the seller is aware of a fact from which a defect of title arises, and *which the vendee had no means of knowing*. After a deed has been made and accepted, though our courts have given relief in anticipation of an eviction which is impending accompanied by danger of insolvency, they have never gone one jot beyond the covenants, except where the fraud of the vendor gives rise to a distinct cause of action independent of the covenants. If then, the vendor does not know of a defect, or, knowing it, does not conceal it, or if the vendee does know it, there is no ground of relief. The vendee then must prove three things: 1st, The defect; 2d, Knowledge and suppression by the vendor; 3d, Ignorance on the part of the vendee —and as to the second matter the scienter is essential."

The appellees also refer for a review and discussion of the authorities cited above, and of the principles involved in this case, confirmatory of the view for which they contend, to the arguments of counsel and the opinions of this court in the case of *The Piedmont Coal and Iron Co.* vs. *Green and al.*, 3 W. Va. R., 65; and *Ameck* vs. *Bowyer*, Id., p. 7; and ask that the action of the circuit court, sustaining the demurrer and dismissing the bill, be affirmed.

37

BERKSHIRE, P. This case was heard on the bill, exhibits and demurrer to the bill, which was sustained by the circuit court, and the bill dismissed with costs. The only question, therefore, is whether the allegations of the bill, taken, as they must be, to be true, show the appellant entitled to the relief prayed for, or any relief, in the premises. The bill alleges that the appellant purchased, in 1861, of his father, Benjamin F. Renick, one of the appellees, sundry valuable tracts of land in Greenbrier county, for the sum of thirty-eight thousand dollars, to be paid in annual payments of two thousand dollars, for which he gave his obligations. That his father and his wife (who was the mother of the appellant), soon after the purchase conveyed the land so purchased, by deed with covenants of general warranty, to the appellant, who has been in possession of the land since his purchase. That three of the obligations executed by him for the purchase money, had been assigned by his father, and judgments obtained by the assignees against the appellant for the amount thereof. That when he received the conveyance for the land, both he and his vendor believed that by reason of said conveyance he had secured a good and perfect title for the whole of the land so conveyed; but that he had since been advised that on account of the invalidity of the acknowledgment of said deed, and the insufficiency of the certificate of such acknowledgment by the wife, the deed was null and void as to her. That a certain tract, containing four hundred and thirty acres, included in such sale and conveyance, of great value, in fact belonged to the wife, she having derived it by descent from her father, and that consequently the appellant had failed to obtain any title thereto except the life estate of his father; and that the wife had departed this life, leaving many children and heirs-at-law, in whom the legal title to said tract had vested. And it is also alleged that the appellant had paid about twenty-four thousand dollars of the purchase money, and that the tract for which he received no title was worth twelve or thirteen thousand dollars, which would leave but a small amount of the purchase money applicable to said judgments. And the bill prays for a recision of the contract or an abatement of the purchase money, and also for general relief.

It was maintained, in the argument for the appellees, that the appellant, upon the allegations of his bill, is entitled to no relief. It is evident that both the vendor and vendee, in this instance, supposed at the time of the sale and conveyance, that the latter would acquire a perfect legal title by the deed, and were mistaken only as to the legal effect of it. And it is clear that the vendor had it in his power, during the life-time of his wife—as to whom only the deed was inoperative—to have remedied the defect in the title to the particular tract in controversy. This, therefore, does not belong to the class of cases where, by reason of a *patent* defect in the title to the estate purchased, and the consequent knowledge of the vendee, he, on account of such knowledge and acquiescence, would be entitled to no relief until eviction. But the strongest ground urged against relief here, is that the vendee did not contract for a "good title," but accepted a deed with covenants of general warranty only, while the insolvency of the vendor is not alleged.

The reluctance of courts of equity to interfere and grant relief in such cases must be conceded; but the facts admitted in this case do not appear to me to be entirely sufficient to preclude the appellant from relief in the premises. It is true, there would seem to be no danger of the immediate eviction of the vendee, and the insolvency of the vendor is not shown; but the defect of the title is clear and admitted. It is also clear that the appellant is not in a condition to acquire title, as was claimed, by the lapse of time. His possession is not adversary, and cannot be until the death of his vendor. He is entitled to the life estate of the latter in the tract in controversy, and also to one share in fee as heir of his mother. The statute of limitations, therefore, cannot run against the heirs of the vendor until after his death, and consequently the prospect of acquiring title by possession and the lapse of time must of necessity, be quite remote and uncertain. In the case of *Clark* vs. *Hardgrave and others*, 7 Grat., 399, which in its main facts is like the case under review, relief was granted the vendee by abating from the purchase money the relative value of the part of the lands purchased, for which the vendor had not title. The vendee, in that case, was in possession of the land purchased, under a deed with covenants

of general warranty, without *other* covenants, and alleged in his bill the defect in the title, as to a part of the land, and that the vendor was "*probably* in doubtful circumstances." The bill was dismissed by the circuit court, on demurrer, but the court of appeals reversed the decree and held that the vendee was entitled to relief (although there was no threatened or impending suit or eviction), and was not bound in such a case of clear defect of title, to risk the hazard of his vendor's solvency. So, under the peculiar circumstances of this case, I think it would be unreasonable to restrict the vendee to his covenant of general warranty, and compel him, with the admitted defect and failure of title, to discharge the whole of his purchase money and to risk the hazard of the solvency of his vendor's estate after his decease.

It was also insisted by the appellees, that the appellant should not be permitted to enjoin the collection of the purchase money, as against them, inasmuch as a large portion claimed to have been paid by him was not, in fact, due when the judgments were obtained against him; and that consequently these payments must have been made to their prejudice and in fraud of their rights. The allegation of the bill on this point is in general terms, that the vendor had paid twenty-four thousand dollars of the purchase money. But whether any part of it was paid after notice of the assignment of his obligations, does not appear, and it cannot, I think, be assumed here that any portion of this amount was in fact paid *subsequent* to such notice. An enquiry into these alleged payments, however, may be properly had when the case goes back to the circuit court.

I think the decree should be reversed, with costs, and the cause remanded to the circuit court for further proceedings.

The other members of the court concurred.

DECREE REVERSED.